Case number 19-1798. Mayor E. Chambers. Appellants v. District of Columbia. Mr. Branch for the appellant. Ms. Browder for the appellee. I'd like to reserve two minutes please. Good morning. Good morning. May it please support. I'm David Branch and I represent the appellant, Ms. Chambers. The issue in this appeal is whether a purely lateral transfer or whether purely lateral transfers are adverse actions under Title VII. It's appellant's position that the district court erred in concluding that purely lateral transfers are not adverse actions under Title VII. Our position is supported by the amicus filed by the Department of Justice. And here, under just a plain meaning of the statute, it's clear that a purely lateral transfer does qualify as an adverse action. As the court is aware, Ms. Chambers was a support enforcement specialist at the District of Columbia Office of Attorney General. And on multiple occasions, she made requests for transfers. I think in the record it indicates that she made at least 20 requests for transfers. And in 2011, she filed an EEO claim. And following the EEO claim, a request, an additional request for a transfer was denied. It's appellant's position that the denial of the transfer itself is an adverse, it can be an adverse action, particularly under the circumstances here as it relates to retaliation when the standard is whether action taken by the employer would dissuade some reasonable person from pursuing an EEO complaint. Wait, Mr. Branch, can I, I want to tease out this, what you just said, but before I do that, I want to be clear about this. My understanding of the government's position is that our decision in Brody was wrong in light of subsequent cases, particularly White, and in light of the text, that with respect to the discrimination provision of Title VII, a purely lateral transfer is covered, correct? Yes. But my understanding is that from the government's brief, that they do not think the same is true with respect to retaliation. That is footnote five, I'm sorry, not footnote five. In the attached Forgis brief, footnote six, the government says, I'm just going to have material adversity requirement as appropriate under 2000 E-3A, that's the retaliation provision, because the text then goes on. And in their Peterson brief, in the SG's office, which we haven't been provided, but which was cited, at footnote five of that brief, the court, the government says, the court in White held that retaliation claims may be based only on actions that a reasonable employee may have found materially adverse. That was the language you just used. So I want to be clear on what your position is here. Is your position, I understand the position that with respect to the discrimination provision of Title VII, a purely lateral transfer is enough. But with respect to retaliation, do you agree that something, it has to be material adverse in a way that a reasonable person would read it that way? Your Honor, I think that the standard is whether it would be an action that's materially adverse that would dissuade a reasonable person from pursuing a claim. Okay. So then to be clear, the, just to be absolute, just let me say it one more time. So I'm sure, I think that's right. And I think that's also consistent with White. But that means that the claims that you have that were dismissed because they were, because the court found them to be purely lateral, that had to do with discrimination, should not have been dismissed in your view if we were to, for example, if on bond court, for example, were to overrule Brody. But the retaliation claim that was dismissed on the ground that it was not, that a purely lateral transfer is not enough and it has to be materially adverse could only be dismissed if we found that it was materially adverse. Is that right? Yes. And I think it is. I understand that. I just want to get the law straight. Okay. Thank you. Okay. And the court, I'm not sure if the court is aware of the court, the Supreme Court did deny the cert petition in the Fortis. Yeah, we know that. Right. So the, but just to clarify here, the, we're still bound by our precedent. There's nothing we can do, this panel can do about that. Right. So the, do you want to, do you want to say something about the retaliation claim that, it seems to me, that's pro, that, well, they're both properly before us, but it's hard to see how we can, how this panel can do anything about your discrimination claim. Do you agree with that given our precedent? I, obviously I agree. I understand the principle of a star decisive and the court is bound by precedent. We did note an opinion or dissenting opinion by Justice Thomas that the court always has the opportunity to correct an error. Well, that's, that's a Supreme Court. You agree with that, don't you? Yes. Yeah. In terms of the retaliation claim, your honor, I, we, it's our position that Ms. Chambers in the district court did present evidence, which would support her position of retaliation, that there was action taken that would dissuade a reasonable person from pursuing. Well, before you go into the details, can I just get straight what we're talking about here? So there's, there's two different EEOC charges, right? There's, tell me if I'm right about this, there's August, August 2010. Yes. All right. And then, then, then a transfer was denied one month later, right? In September. Yes. So, so my first question about that, where in the district court, or even in your blue brief here, did the, did the plaintiff argue that that denial of the transfer was retaliatory for the EEOC complaint filed in August? I know you make the point in your reply brief, but where in the district court does she argue that that transfer was retaliatory? So your honor, the appellant was represented by a different counsel at the district court. So, right. I understand that, but where you, you made the argument in your reply brief, you wrote that, right? Yes. So where did she say that in the, where did she make that claim in the district court? All I can say is that she made a general claim that she requested at least 20 transfers and the requests were not granted. Okay. All right. But there's no place. So you're telling me then that, I mean, I've looked, we couldn't find any place where she connected this, where she connected the September denial to the August EEO complaint. I couldn't find it. All right. So then the next one is March 2011, right? That's the next EEO complaint. That's correct. Okay. And the transfer, the denial was in September, six months later. Yeah. Okay. We have case law in this circuit, I think, which says that anything beyond three months or so is not temporally connected sufficiently to make out a retaliation claim. I think, isn't that accurate? I think it's two months. Two months. Mr. Branch, do you know about those cases? I do. Yeah. So what's your response to that? I mean, it's, I understand the court's opinion. I think that case in all cases have to be more fact specific. So if you have a complainant who's filed an EEO complaint and files a later EEO complaint and action here is taken, well, it was taken six months after the latest EEO complaint, but the EEO complaint was still ongoing. So the fact that there was a complaint filed, it's our position that would not necessarily end the protected activity. Do you have any cases that has this circuit said that? The fact that the... I mean, isn't it true? I mean, in most circumstances, these EEO administrative complaints are not resolved instantly. And it's not unusual that it would be pending. An EEO complaint filed on January 1st would be a month later. I mean, that's not unusual. But my other point is, I mean, do you know of any cases that say that? And you didn't argue this in your brief, right? So what I will say is not all protected activity is just limited to the actual filing of an EEO complaint. For example, and I don't know the specific facts of the case where the court held that if something happened two months, more than two months later, it was not temporally approximate to the action complained about. But you may have a case where someone just opposes discrimination or someone reports something and it's not pursued beyond that, as opposed to a case where someone files a complaint, it's ongoing. Yeah, I understand that. But your case is, you allege, not you, the plaintiff here alleges denial of transfer in retaliation to filing EEO complaints. That's her case. She didn't say it was in retaliation for anything else. She said it was in retaliation for those two complaints. She did say it was in retaliation for filing the EEO complaints, but there were no EEO complaints. Okay. All right. What about, doesn't it depend, Mr. Branch, on when the defendant learns of the complaint? So even if it was filed six months before, the defendant doesn't learn about it until two months before, we're no longer in the six month range. The question is retaliation for knowing that someone's complained, not just for complaining. Doesn't that help your case? It does help our case, Your Honor. And I'm not sure that we have exactly in the record when the district learned that she filed this, filed the second complaint. I don't know how long it took, but the fact that if the court's rule is that generally, if it's two months, the fact that it's six months, does not appear to be, I don't think that there's a bright line rule that absolutely it has to, if it's more than two months, then it can't be considered retaliation, particularly when you have other facts supporting the position that it's retaliatory. Okay. Judge Garland, Judge Ginsburg, any other questions? No, thank you. All right. We'll hear from Mr. Browder. Good morning, Your Honors. Megan Browder. I'm sorry. That's okay. I'm sorry. Not a problem. I do want to pick up on something that Judge Tatel was and that this case is about two transfers. There's the 2010 transfer, which Ms. Chambers alleges was discriminatory. And in fact, on the August, 2010 charge, Ms. Chambers brought a separate claim against the district for that charge, which was also dismissed. So she would be precluded from bringing any sort of retaliation claim against the district here because she already brought a retaliation claim on other grounds against the district before. Again, also there's the 2011 request, but as a threshold issue, the district is entitled to summary judgment on both claims for the same reasons. Ms. Chambers has failed to show any objectively tangible harm stemming from either denial. All right. Can I ask you a question about that? So the position of the United States Justice Department is that a purely lateral transfer on the basis of race, religion, gender is a violation of Title VII. What is the position of the District of Columbia on this? So first to say that the district responded to Ms. Chambers' opening brief and saying that this court, as your honors have said this morning, this court is bound by stare decisis. I understand that. But now I'd like to know, just as the Justice Department offered up its position that a racially discriminatory lateral transfer with nothing else violates Title VII, what is the position of the Attorney General of the District of Columbia? Setting aside that DOJ is not a party in this case, that would not categorically be an adverse action because this court has said several times that you have to have- Leave it aside, Brody. I'd just like to know for my own information. So just to put it clearly as I can, if a supervisor says, I will not laterally transfer you because of your race, but I will transfer laterally transfer anyone of my race, your position is really, could it really be the case that the District of Columbia's position is that that doesn't violate Title VII? Without any attendant consequences? Yes. Yes. And I think that follows from the Supreme Court and from this court. Indeed, in Ortiz-Diaz, which is a case from just three years ago, this court had a similar- Pardon me? I know it follows from our cases. As you know, then Judge Kavanaugh and Judge Rogers wrote separately in those cases to say that we should overturn that question. The government also knows, that is, the United States also knows what our cases hold, but they say it's wrong. Now, I know that as a staff attorney, you're not entitled to make this decision, but I would like the Attorney General's Office to file within five days what their position is on what the law should be with respect to a discriminatory lateral transfer. Okay? We can certainly do that, Your Honor. Great. I would also note on that point that Title VII is a balance. It's a balance between the employee's right to be free from discrimination, but also employer prerogatives to make a myriad of decisions that employers have to make every day. In order to- You see those words, balance, in Title VII? The only words I see in Title VII are the same words that Judge Kavanaugh and Judge Rogers saw, which don't say anything about balance. They say, it shall be unlawful to discriminate against any individual with respect to his terms and conditions of employment because of the individual's race. It doesn't say there's a balance. That's what the text says. The text does not say that, Your Honor. You're correct. But the text also does not say adverse action. That's a judicial gloss that the Supreme Court has put upon it. No, but the Supreme Court has not put that gloss on discrimination. It has put that gloss on retaliation, but it has not put the gloss on discrimination. In fact, there is a provision of the discrimination section which does talk about adverse action, but that is Subpart II, which is where you limit, segregate, or classify employees or otherwise adversely affect his status. But Subpart I, which is the one at issue for us, does not use the word adversely. That's correct, but I believe there still must be materially adverse consequences stemming from- I know that that is certainly the law in our circuit and in, I think, all the other circuits, but the Justice Department has urged the Supreme Court to change that, and I would like to know what the Attorney General of the District of Columbia believes, whether they agree with the Justice Department or not. That's all. The district will certainly file that to this court. I would note that this is a threshold issue for Ms. Chambers, and that even if she passes that threshold issue, her claims still fail on a multitude of reasons. As to her 2010 discrimination claim, she doesn't show any pretext on the basis on the part of the district. The district gave a legitimate reason for denying her transfer in 2010. They said that the Child Support Services Division is going through reorganization, and she's needed in the Enforcement Division. She doesn't dispute that that was a legitimate reason, and she doesn't provide any evidence to suggest that that reason was pretextual or that it was made on the basis of discrimination. The closest that she comes, she tries to name a number of comparators, but none of these are apt or appropriate comparators to her, because as this court said in Burleigh, to be an appropriate comparator, the proffered person must be nearly identical, sorry, the employee position must be nearly identical in all material relevant aspects. The persons that Ms. Chambers lists either didn't hold her same job or a similar job, were transferred by somebody else, were not transferred at all, were transferred due to a more pressing reason, such as an to a comparator, and she doesn't provide any other evidence of a discriminatory motive. Is it your position, then, that if we were to agree with your last point, we could pretermit the threshold question for another day? I believe this court could, Your Honor. In Hernandez v. Pritzker, there was a similar position, where it was a question of whether the transfer was an adverse action, and this court said, we don't have to reach that issue, because even if it was an adverse action, the claim still fails. These claims were before the district court, the district briefed this issue below, and so this court could affirm on that ground. What was the case you just cited? Hernandez v. Pritzker. Sorry, I don't have the case site right in front of me. And as to the 2011 denial of transfer, as Judge Tatel mentioned earlier, the temporal proximity simply is just too far removed, and she doesn't provide any other evidence of a retaliatory motive, and to Judge Garland's point, we don't have any evidence in the record to suggest when Ms. Rice or the district became aware of her charge of discrimination. She does say in her reply brief that temporal proximity can suffice for causation, but again, that's only for the causation part. This court has been clear that once you get to pretext, you have to have something beyond the temporal proximity, because Ms. Chambers cannot show that, and she also cannot show any discriminatory motive for the 2010 transfer. The district would ask that the district court be affirmed. All right. Okay, thank you. Mr. Branch, you are out of time, but you can have one minute. Mr. Branch, I think your microphone must be off, because we're not hearing. You must be on mute. Okay, now you're on. Yes. So, Your Honor, for the 2010 denial of transfer, Ms. Chambers did list names of individuals who were similarly situated who were permitted to transfer, so we believe that that issue raised at least an issue for the court that should have survived summary judgment. Her list and her assertions of the individuals who were transferred was countered with an assertion by Ms. Rice of the positions held by these individuals, and her position was that they were not similarly situated, but that's really an issue that should have been resolved by a jury beyond summary judgment. We just have two competing versions of whether these folks were similarly situated, and there's no requirement that they be exactly in the same position. In terms of the 2011 denial of transfer, the district made an argument that part of Ms. Chambers' position was that she included hearsay with her assertions of what her position was and the positions of these other individuals, and basically, she reported that another supervisor indicated that she would welcome Ms. Chambers to her position, to her division. That was an issue. It was not hearsay. It was really an admission by the opposing party by an agent of the district. So, it's our position that she did present sufficient evidence to survive summary judgment, and we believe that the court needs to address the issue of whether this adverse action, whether Model 7 permits an adverse action, purely lateral transfer as part of an adverse action. All right. Thank you, Ms. Browder, Mr. Branch. Thank you both. The case is submitted.
judges: Tatel, Garland, Ginsburg